IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM LESTER RICE, JR., | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2051 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| *Respondent.* | § | |

## MEMORANDUM OPINION AND ORDER

William Lester Rice, Jr., a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging his state felony conviction. Respondent filed a motion for summary judgment (Docket Entry No. 24), to which petitioner responded (Docket Entry No. 27).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this case for the reasons that follow.

## I.  PROCEDURAL BACKGROUND

On retrial following a mistrial, the jury found petitioner guilty of burglary of a habitation in Harris County, Texas. After finding "true" to two enhancement paragraphs, the jury assessed punishment at thirty years incarceration. The conviction was affirmed on appeal. *Rice v. State*, No. 01-02-0094-CR (Tex. App. – Houston [1st Dist.] 2003, pet. ref'd)

(not designated for publication). The Texas Court of Criminal Appeals refused discretionary review, and denied state habeas relief. *Ex parte Rice*, Application No. 24,079-13.

## II. GROUNDS FOR HABEAS RELIEF

In his petition and more definite statement, petitioner lists numerous grounds for federal habeas relief, many of which lack clarity or sense.[1]  The Court has made every reasonable effort to understand petitioner's grounds, and, where possible, restate them. Petitioner's grounds, grouped and renumbered for efficiency and convenience, are as follows:

A.  Pretrial Habeas Grounds:

   (1)   he was forced to chose between a speedy trial and trial preparation;

   (2)   he was denied copies of the police reports and mistrial transcript;

   (3)   the State violated *Brady* by suppressing the mistrial transcript;

   (4)   the indictment was unsupported by evidence;

B.  Trial Habeas Grounds:

   (5)   the evidence was insufficient and the jury inferred guilt from his silence;

   (6)   the jury was denied a defense diagram during deliberations;

---

[1] For instance: "The applicant was denied evidence facts produced on cross-examination in violation of due process it is jury trial relevant to his innocence as an intrinsic handwritten line made by Patricia Arseno in a defense diagram, that proved her testimony impossible, when the jury was instructed it was not in evidence which denied the applicant confrontation." (Docket Entry No. 2, p. 3); "The trial court was biased against the applicant's right to a fair trial and presumption of medicines . . ." *Id.*, p. 4.

(7)     the trial court evinced actual bias against him;

(8)     standby trial counsel refused to help him;

(9)     he was denied effective assistance of standby counsel;

(10)    he was denied confrontation and compulsory process because the State misidentified the true complainant;

(11)    he was denied confrontation when the trial court limited his cross-examination of complainant regarding her absent husband;

(12)    he was denied confrontation when the trial court limited his cross-examination of complainant regarding her trial subpoena;

(13)    his conviction was obtained through perjury;

(14)    his in-court and out-of-court identifications were based on perjury and incredible circumstances;

(15)    he was forced to proceed *pro se* on retrial because the trial court refused to appoint him new counsel;

(16)    the State violated *Batson*;

(17)    there was no evidence to support a "true" finding to the second enhancement paragraph;

C.    Post-Trial Habeas Grounds:

(18)    he was denied a complete record on appeal; and

(19)    appellate counsel was ineffective in failing to obtain a complete record on appeal.

3

Respondent argues that these grounds fail as a matter of law.  Although respondent argues that some of petitioner's grounds are unexhausted, the Court will address the merits of all of petitioner's grounds, as none entitle him to habeas relief.

In denying habeas relief, the state court found as follows:

> The Court finds that there are no controverted, previously unresolved facts material to the legality of the Applicant's confinement which require an evidentiary hearing and recommends that the relief requested be denied because Applicant's instant habeas allegations, even if sworn, are insufficient to overcome the State's denials since the allegations fail to meet the burden of alleging and proving, by a preponderance of the evidence, facts which, if true, entitle him to habeas relief.

(Docket Entries No. 5, p. 22; No. 13, pp. 4-5, citations omitted.)  No other findings were made.

### III.  FACTUAL BACKGROUND

The state appellate court set forth the following statement of facts in its opinion:

> On September 27, 2000, while she was away from home, Laandrea Hunter's house was burglarized.  Hunter's neighbor, Patricia Arseno, was outside her home when she observed appellant walking from Hunter's yard, carrying an orange electrical cord and another large object covered by a sheet.  Arseno and appellant looked at each other for a couple of minutes and then appellant walked away.
>
> When Hunter returned home that day, she observed that the back door was kicked in and wires were strewn across the house.  Hunter noticed that a satellite box, a VCR, and two leather coats were missing.  After the police arrived, Hunter and the officer walked into the back yard. Hunter then realized that the storage shed had been burglarized and discovered that lawn mowers, a weed-eater, a moped, a bicycle, and yard equipment were missing.  Hunter was acquainted with appellant, who had previously done odd jobs for Hunter's husband.

After learning that Arseno had seen someone coming from her home on the day of the burglary, Hunter contacted the police and provided them with the new information.  Officer Timothy Porche conducted an investigation and subsequently showed Arseno a photo spread.  Arseno identified appellant in the photo spread as the man she saw leaving Hunter's home on the day of the burglary.  Officer Porche, pursuant to an outstanding parole warrant, went to appellant's home to arrest him.  While searching the house for appellant, Officer Porche noticed, in plain view, several items matching the description of those taken from Hunter's home.  Porche seized the items, which Hunter later identified as items which had been stolen from her home.

Appellant's first trial commenced on August 7, 2001.  Appellant was represented by appointed counsel at the first trial.  After conducting a hearing on appellant's motion to suppress evidence and motion to suppress identification, the trial court denied the motions.  The trial terminated in a mistrial on August 10, 2001.  On October 3, 2001, a [*Faretta*] hearing was conducted and appellant's motion for self-representation was granted.  A hearing was held on November 19, 2001, on appellant's pre-trial motions, and the second trial commenced on November 26, 2001.  Appellant requested and received stand-by counsel to provide him with advice on the law during his second trial.

*Rice*, at *2-4.

The jury found petitioner guilty, found "true" to two enhancement paragraphs, and assessed punishment at thirty years incarceration.

## IV.  THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as

determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## V.  PRETRIAL HABEAS GROUNDS

Under Ground (1), petitioner argues that the trial court forced him to choose between a speedy trial and his right to adequately prepare for retrial.  Petitioner claims that, because he was indigent and was proceeding *pro se* on retrial, he was entitled to a free copy of his mistrial transcript in order to prepare for retrial.  He further claims that he was entitled to proceed to retrial within six months of his original trial date.

A careful review of the state court record fails to reveal, and petitioner fails to cite, any instance where the trial court forced petitioner either to waive his right to a speedy trial or proceed to trial prior to preparation of the requested mistrial transcript.  To the contrary, at the pretrial hearing held November 19, 2001, petitioner himself insisted on going to trial without completion of the mistrial record:

> THE COURT:         [H]ave you done the [mistrial] transcript?
>
> COURT REPORTER:     No, ma'am, it is not complete.

> THE COURT:     Okay.  All right.  Well, let's go ahead and get a trial date so that you can get that transcript.  February 25th.
>
> PETITIONER:     Your Honor, defense is please requesting that it be in six months because I've waited ten months for my first trial and it will be six months past if I go to February 25th for the next trial.
>
> THE COURT:     You want to go six months from now?
>
> PETITIONER:     No, six months from my last trial.
>
> THE COURT:     Can't get you a transcript then.

7

PETITIONER:      *I'll go without a transcript. I've been here 14 months.*

THE COURT:       I can't get you to trial any time quicker than that because – I
                 mean, that's the problem. If you want the transcript, you ought
                 to get it; but I can't get you to trial quicker than that because of
                 my trial schedule.

PETITIONER:      But I was scheduled for trial in November, November 5th.

THE COURT:       Right. You told the bailiff you wanted to get a transcript. So,
                 I couldn't try your case without a transcript because you told the
                 bailiff you wanted a transcript and you wanted your pretrial
                 motions heard. That's why we didn't go to trial.

PETITIONER:      Defense objects to all of this. The defense objects. I was
                 supposed to be set for trial November 5th. I sent letter after
                 letter after motion: Please do not reset me, please take me to
                 trial on November 5th. I waited ten months for the first trial,
                 ma'am, and I didn't –

THE COURT:       My understanding was you didn't want to go to trial because you
                 wanted a pretrial conference?

PETITIONER:      No, no, no. I wanted to go to trial straight on November 5th.

THE COURT:       You want to go to trial on Monday?

PETITIONER:      Yes, ma'am.

THE COURT:       Make sure your witness is in okay physical condition. *You
                 understand that the transcript will not be ready. You will not
                 have that transcript.*

PETITIONER:      *I can rely on my memory because that's what's in the record.*

THE COURT:       All right. Let's do it Monday then.

S.F. Vol. 4, pp. 11-14 (emphasis added).

8

To the extent that petitioner argues the trial court forced him to elect between two constitutional rights – speedy trial versus a copy of the mistrial transcript – the trial court forced no such election. The trial court neither refused to provide petitioner a copy of the transcript without waiver of a speedy trial nor did it force petitioner to postpone trial until the transcript was completed.[2] Nor does petitioner present any probative evidence that the court reporter intentionally delayed, or was instructed to delay, completion of the transcript. Rather, petitioner plainly informed the trial court that he wanted to proceed to retrial without waiting for the transcript, and that he could "rely on [his] memory."

Nor does the record establish that the trial court failed to order the transcript prepared in a timely manner. Petitioner filed his motion for self-representation on September 13, 2001. C.R. at 141. Trial counsel filed a motion for preparation of the mistrial transcript on September 14, 2001, but no hearing was set due to petitioner's motion to proceed *pro se*. C.R. at 147. A hearing under *Faretta v. California*, 422 U.S. 806 (1975), was held on October 3, 2001, at which time the trial court allowed petitioner to proceed *pro se* at retrial. The trial court then reminded petitioner of her standard discovery order, and informed him that any additional discovery requests could be discussed at a separate hearing. S.F. Vol. 3,

---

[2]Indeed, the trial court would have run afoul of well established Supreme Court precedent had it forced petitioner to proceed to retrial prior to completion of the requested mistrial transcript. *See Britt v. North Carolina*, 404 U.S. 226, 227 (1971) (holding that indigent defendants have a constitutional right to a free transcript of prior mistrial proceedings for use on retrial unless they are provided an adequate alternative).

p. 10. At the pretrial hearing of November 19, 2001, the trial court told petitioner that his prior attorney "never got [the motion for mistrial transcript] ruled on because you decided to represent yourself." *Id.*, Vol. 4, p. 5. Petitioner then elected to proceed to retrial without the mistrial transcript. *Id.*, pp. 12-13. No deliberate delay or denial of due process is shown.

Petitioner complains under Ground (2) that the trial court refused to order the State to provide him copies of the mistrial transcript and the police reports for retrial. He specifically claims that, because the eyewitness's testimony changed on retrial, the mistrial transcript was necessary to effectively cross-examine her and establish her perjury.

Nothing in the record shows that the trial court refused to order the State to provide petitioner a copy of his mistrial transcript prior to retrial. To the contrary, and as shown under Ground (1), petitioner insisted on proceeding to retrial prior to completion of the mistrial transcript. Petitioner does not show, and the record does not reflect, that the State had access to the mistrial transcript prior to retrial or was ordered to withhold it from petitioner.

The record further shows that the trial court made clear to petitioner at the *Faretta* hearing that state law did not entitle him to a pretrial copy of the police reports. S.F. Vol. 3, pp. 10-11. The trial court again informed petitioner at the subsequent pretrial hearing that he had no legal right to copies of the police reports. S.F. Vol. 4, pp. 4-5. Nevertheless, petitioner was given an opportunity to review an abridged copy of the police reports prior to retrial. *Id.*, p. 14; Vol. 5, p. 6. Prior to his cross-examination of the police officer at retrial,

petitioner reviewed the full police report, which he then used during cross-examination. S.F. Vol. 6, pp. 60-61. Petitioner fails to show that his rights of confrontation and to present a defense were denied.

In Ground (3), petitioner argues that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by suppressing the mistrial transcript. To be entitled to federal habeas relief under *Brady*, a petitioner must prove that the prosecutor suppressed or withheld evidence favorable and material to his defense. Here, nothing shows that the mistrial transcript was completed and made available to the State for use at retrial. Accordingly, the record does not show that the State withheld or suppressed the mistrial transcript for petitioner's use at retrial.

By Ground (4), petitioner challenges the sufficiency of the evidence to support his criminal indictment. He argues that, because the State had no lists of the grand jurors' names or of the items presented to the grand jurors, the indictment was unsupported by evidence and invalid. Because the sufficiency of the evidence to support an indictment is not a cognizable federal habeas claim, petitioner's argument is without merit. *Tijerina v. Estelle*, 692 F.2d 3, 6 (5th Cir. 1982); *see also United States v. Williams*, 504 U.S. 36, 53-54 (1992).

Petitioner fails to show that the state court's adjudications on the merits of Grounds (1), (2), (3), and (4) were contrary to, or involved an unreasonable application of, Supreme Court precedent, or were the product of an unreasonable determination of the facts in the

record.  *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 404-05.  Respondent is entitled to

summary judgment dismissing these pretrial habeas grounds.

## VI.  TRIAL GROUNDS FOR HABEAS RELIEF

In Ground (5), petitioner argues that, because the evidence was insufficient to support

the conviction, the jury necessarily inferred his guilt from his post-arrest silence.  Factual

insufficiency of the evidence is not a cognizable federal habeas ground. *Estelle v. McGuire*,

502 U.S. 62, 67 (1991); *Woods v. Cockrell*, 307 F.3d 353, 357-58 (5th Cir. 2002).  A federal

habeas challenge to the sufficiency of the evidence to support a state conviction must be

construed as a challenge to the legal sufficiency of the evidence under *Jackson v. Virginia*,

443 U.S. 307 (1979).  Under *Jackson*, the proper inquiry is whether, "after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319.

The state court of appeals found the evidence legally sufficient, as shown by the

following:

> Appellant asserts that the State's eyewitness, Arseno, was not credible and that
> Arseno's observation of appellant leaving Hunter's house was from too great
> a distance to be accurate.  Appellant also contends that the State cannot rely on
> an inference of guilt from the evidence seized from his property because he
> claims there is no evidence that he exercised control over the property.
>
> A legal sufficiency challenge requires us to determine whether, after viewing
> the evidence in the light most favorable to the verdict, any rational trier of fact
> could have found the essential elements of the offense beyond a reasonable
> doubt.  We note that, as the exclusive judges of the facts, the credibility of the

witnesses, and the weight to be given their testimony, the jury may believe or disbelieve all or any part of a witness's testimony.

\*     \*     \*     \*

A person commits the offense of burglary if, without the effective consent of the owner, the person: (1) enters a habitation or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; . . . or (3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02.

In *Solis v. State,* the court acknowledged a long line of cases where the court has held that recent and unexplained 'possession of all or any parts of the items taken in a burglary is sufficient to sustain a conviction for burglary.' Where there is independent evidence of a burglary, recent unexplained possession of property taken in that burglary will support an inference of guilt. Here, the State had even more than evidence of appellant's possession of recently stolen property.

Hunter's house was burglarized on September 27, 2000. Some of Hunter's stolen property was found in appellant's home on October 5, 2000. Appellant offered no explanation as to why Hunter's stolen property was found in his home. In addition, Arseno was certain that appellant was the person she saw coming out of Hunter's house on the day of the burglary. Arseno and appellant looked at each other for about two minutes and then appellant left Hunter's yard carrying items covered with a sheet. Arseno then walked through a trail near the houses and watched appellant as he turned on Grassmere street. Arseno testified that, although she did not know appellant's name, she had seen him in the neighborhood previously, particularly about four times on Grassmere street. Independent evidence of the burglary was presented, as well as evidence of appellant's recent, unexplained possession of some of the stolen property.

A rational jury could have found the essential elements to prove appellant guilty of committing the burglary of Hunter's home. As exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, the jury was free to believe or disbelieve all or any part of a witness's testimony. After reviewing the record and all of the evidence, we do not find that the proof of guilt is so obviously weak as to undermine

confidence in the jury's determination, or that the proof of guilt is greatly outweighed by contrary proof. Therefore, we find the evidence was both legally and factually sufficient to support the verdict.

*Rice*, at *7-8 (citations omitted).

The Court has reviewed petitioner's insufficiency claim and finds it without merit. Under *Jackson*, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." 443 U.S. at 319. Any contradictory testimony does not affect the validity of the guilty verdict. *Id.* The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *See Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The evidence set forth by the state court of appeals in its opinion is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). An independent review of the trial record reveals sufficient evidence under *Jackson* to sustain the jury's verdict. As the evidence is legally sufficient, petitioner's secondary claim – that the jury necessarily inferred his guilt from his post-arrest silence because of insufficient evidence – likewise fails.

Under Ground (6), petitioner complains that he was denied his right of confrontation because a defense diagram of the crime scene was withheld from the jury during deliberations. The record shows that petitioner drew a diagram on an exhibit board during trial, purportedly of the burglarized house and its surrounding property. S.F. Vol. 7, p. 23. During petitioner's cross-examination of Arseno, Arseno drew a line on the diagram that, according to petitioner, showed she had an obstructed view of the house and burglar. *Id.*, p. 26. Petitioner did not mark or introduce the diagram into evidence. The jury subsequently requested to review the diagram during deliberations, but the trial court denied the request because the drawing was not in evidence. C.R. at 196.

Petitioner's habeas ground is without merit. The confrontation clause of the Sixth Amendment gives the accused the right to be confronted with the witnesses against him. This is a right to an adequate opportunity to cross-examine adverse witnesses in a face to face confrontation at trial to allow the jury to judge the credibility of the witness. *See, e.g., Ohio v. Roberts*, 448 U.S. 56, 63-64 (1980); *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).

The record in the present case clearly establishes that petitioner was provided the opportunity to cross-examine Arseno, and that, at his request, Arseno drew a line on the diagram showing her point of observation during the offense. The jury was present during petitioner's cross-examination of Arseno, and was able to observe her drawing on the diagram. Petitioner was not prevented from presenting this theory of defense to the jury, and he demonstrates no violation of his confrontation rights. Petitioner does not present, and this

Court is not aware of, any Supreme Court authority holding it a denial of confrontation rights for a trial court to disallow a deliberating jury from reviewing demonstrative items not introduced into evidence during trial. Nor does he show, even assuming error, that it had a "substantial and injurious effect or influence in determining the jury's verdict," or that there was "more than a mere reasonable possibility that it contributed to the verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

In Ground (7), petitioner claims structural error in his conviction because the trial judge evinced actual bias against him and should not have presided over his retrial. As proof of actual bias, petitioner alleges that the judge deliberately delayed his trial and expressed her opinion that the eyewitness had testified truthfully at the mistrial. The record reveals the following relevant exchange during the pretrial hearing prior to retrial:

> PETITIONER:  I had a point about that, your Honor, about Ms. Arseno's pretrial testimony and on the stand testimony. It was so deceptive, your Honor, it can only be held as perjury. This is the only document I have for the Court to review.
>
> THE COURT:  Sir, the problem is that's a jury question as to whether or not they believe that she was – is not telling the truth. *I think that she told the truth.* So, I can't really address your issue because you want a jury trial in this case. So, therefore, you have to wait and let the jury decide if she's being truthful or not.

S.F. Vol. 4, p. 7 (emphasis added).

Due process requires that a defendant be accorded a "fair trial in a fair tribunal." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In cases where a petitioner is alleging actual

bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show

a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555

(1994); *Buntion v. Quarterman*, 524 F.3d 664, 674 (5th Cir. 2008). As recognized by the

Supreme Court,

> The judge who presides at a trial may, upon completion of the evidence, be
> exceedingly ill disposed towards the defendant, who has been shown to be a
> thoroughly reprehensible person. But the judge is not thereby recusable for
> bias or prejudice, since his knowledge and the opinion it produced were
> properly and necessarily acquired in the course of the proceedings, and are
> indeed sometimes (as in a bench trial) necessary to completion of the judge's
> task. As Judge Jerome Frank pithily put it: 'Impartiality is not gullibility.
> Disinterestedness does not mean child-like innocence. If the judge did not
> form judgments of the actors in those court-house dramas called trials, he
> could never render decisions.' *Also not subject to deprecatory*
> *characterization as 'bias' or 'prejudice' are opinions held by judges as a*
> *result of what they learned in earlier proceedings. It has long been regarded*
> *as normal and proper for a judge to sit in the same case upon its remand, and*
> *to sit in successive trials involving the same defendant.*

*Liteky*, 510 U.S. at 550-551 (citation omitted, emphasis added).

In the instant case, the trial judge expressed her opinion post-trial as to testimony

already heard and weighed by the jury; she expressed no opinion during trial or retrial, to the

media, or in any other manner likely to cause petitioner or his defense harm on retrial.

Petitioner fails to show that the trial judge's bench opinion constituted actual bias causing the

denial of a fair jury proceeding on retrial. *Buntion*.

Neither petitioner nor the record reveals any deliberate trial delay attributable solely

to the trial judge as evidence of actual bias. To the extent petitioner is raising a speedy trial

17

violation under *Barker v. Wingo*, 407 U.S. 514 (1972), his argument fails.   The Sixth
Amendment guarantees every defendant in a criminal case the right to a speedy trial,
applicable to the states through the Fourteenth Amendment. U.S. Const. amend. VI; *Barker*,
407 U.S. at 519-22.   To determine whether a defendant's right to a speedy trial has been
violated, courts consider (1) the length of the delay, (2) the reason for the delay, (3) the
defendant's diligence in asserting his right to a speedy trial, and (4) any prejudice to him
resulting from the delay. *Barker*, 407 U.S. at 530-33; *United States v. Cardona*, 302 F.3d 494,
496 (5th Cir. 2002).   Petitioner does not prevail under these factors.   The Fifth Circuit has
held that a one-year delay is sufficient to warrant judicial examination of a speedy trial claim.
*See United States v. Frye*, 372 F.3d 729, 736-37 (5th Cir. 2004) (discussing the "one-year
guideline" for whether a delay is sufficient to require an analysis of all four *Barker* factors).
In the instant case, petitioner claims that he waited ninety days for the retrial.   (Docket Entry
No. 2, p. 22.)   This duration does not rise to the level of delay sufficient to warrant judicial
examination of a *Barker* speedy trial claim under *Frye*.   Nor does petitioner present any
probative summary judgment evidence that any delay caused specific prejudice to his defense.
*See Doggett v. United States*, 505 U.S. 647, 656 (1992).   Habeas relief is unwarranted.

Petitioner, who waived his right to trial counsel and proceeded *pro se* at retrial,
complains under Ground (8) that his standby counsel "sat silent" and failed to help him on
retrial when Arseno's testimony differed from her mistrial testimony. (Docket Entry No. 1,

18

p. 19.) Because petitioner complains of a specific instance of failure to assist, the Court construes this allegation as raising a claim for ineffective assistance of standby trial counsel.

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court recognized a criminal defendant's Sixth Amendment right to conduct his own defense. Although the *Faretta* Court held that a trial court may (at its discretion) appoint standby counsel to assist the *pro se* defendant in his defense, neither the Supreme Court nor the Fifth Circuit Court of Appeals has expressly held that *pro se* defendants have a constitutional right to standby counsel. *See, e.g., McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984). If standby counsel is appointed, counsel's role of is one of an "observer, an attorney who attends the proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense." *Childress v. Johnson,* 103 F.3d 1221 (5th Cir. 1997). As the Fifth Circuit observed in *United States v. Taylor*, 933 F.2d 307 (5th Cir. 1990),

> There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel not be responsible – and not be perceived to be responsible – for the accused's defense.

*Id.* at 312. Significant to petitioner's argument, "*Faretta* does not require a trial judge to permit 'hybrid' representation[.] A defendant does not have a constitutional right to choreograph special appearances by counsel." *McKaskle*, 465 U.S. at 183.

Accordingly, standby counsel's "silence" raises no Sixth Amendment issue, as standby counsel was not constitutionally authorized to interfere unilaterally with petitioner's

19

presentation of his defense before the jury.  In fact, such actions by standby counsel would

have run counter to the Supreme Court's warnings in *McKaskle*.  Nor, under *McKaskle*, was

petitioner at liberty to delegate certain parts of his defense presentation to standby counsel

while retaining other portions for himself.  To the extent petitioner complains that standby

counsel was unable to recall Arseno's prior testimony from the mistral for petitioner's use in

cross-examining Arseno on retrial, petitioner fails to show that counsel had any greater recall

of Arseno's prior testimony than did petitioner himself.  Accepting as true petitioner's

allegation that standby counsel told petitioner, "I don't know, ask [them] what you want to

ask [them]," counsel's statement reflects a lack of factual knowledge, not a refusal to provide

legal advice or assistance as standby counsel.

Even assuming that ineffective assistance of standby counsel were to constitute a

cognizable federal habeas claim, petitioner shows no entitlement to relief.  The Sixth

Amendment to the United States Constitution guarantees a criminal defendant the right to the

effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's

claim that he was denied effective assistance of counsel is measured by the standards set out

in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness

claim, a petitioner must establish both constitutionally deficient performance by counsel and

actual prejudice as a result of counsel's deficient performance.  *Id.* at 687.  The failure to

demonstrate either deficient performance or actual prejudice is fatal to an ineffective

assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Here, petitioner demonstrates neither deficient performance nor prejudice. The record does not show that standby counsel had recall of Arseno's prior statements from the mistrial but refused to provide that information to petitioner, or that, but for counsel's deficient performance, the result of the trial would have been different.

Under Ground (9), petitioner complains that the trial court denied him effective assistance of counsel by appointing his mistrial counsel as his standby counsel on retrial. Petitioner claims that the trial court unlawfully limited his choices for standby counsel. This claim raises no issue of federal constitutional dimension, as the Supreme Court has not recognized a Sixth Amendment right to "hybrid" representation or standby counsel for

defendants who have waived their right to counsel. *See McKaskle*, 465 U.S. at 177.
Petitioner was aware that he had no right to standby counsel, as shown by the following
exchange during the *Faretta* hearing:

> PETITIONER:   Okay. [The *Faretta* form] says [']he has no right to standby
> counsel['].
>
> THE COURT:   Right.  You understand that.
>
> PETITIONER:   That I'll be there by myself.
>
> THE COURT:   Right.
>
> PETITIONER:   Cool.

S.F. Vol. 3, p. 9.

Even assuming a constitutional right to the appointment of standby counsel, a criminal
defendant is not entitled to appointed counsel of his choice. *United States v. Fields*, 483 F.3d
313, 350 (5th Cir. 2007).  Accordingly, no cognizable habeas ground is raised by petitioner's
complaint that his choices for standby counsel were limited.

In Ground (10), petitioner asserts violations of his rights to confrontation and
compulsory process because the State failed to "correct a defense (sic) indication that L.
Hunter was the complainant of the case or simply make awareness that purported person R.
Montoya had made the complaint thus he was the accuser in the case." (Docket Entry No. 2,
p. 6.) Petitioner argues that, although the complainant is Landrea Anette Hunter, the criminal
complaint in his case was signed by "R. Montoya," an assistant district attorney who accepted
the complaint. C.R. at 2.  The actual indictment in petitioner's case, signed by the grand jury

foreman, made no mention of "R. Montoya." C.R. at 6. Both the criminal complaint and the indictment named Hunter as the complainant. Petitioner's argument has no factual basis, as Hunter, not Montoya, was named in the indictment and identified at trial as the complainant. The record shows, and petitioner admits, that he cross-examined Hunter as the complainant at trial. Further, petitioner acknowledged on appeal that Hunter was the complainant, as did the state court of appeals. Petitioner establishes no violation of his right to confront his "actual accuser" in this case.

Petitioner complains under Ground (11) that the trial court denied him his right of confrontation by refusing to let him cross-examine the complainant regarding her "absent husband." In like manner, he argues under Ground (12) that the trial court violated his confrontation rights by refusing to let him cross-examine complainant regarding her trial subpoena and property receipts. (Docket Entry No. 2, p. 6.)

Regarding Ground (11), the record shows the following exchange between petitioner and complainant on retrial:

PETITIONER:       Good morning, Ms. Hunter. You say you're married and you report that I work for your husband?

COMPLAINANT:  Uh-huh. I mean, yes.

PETITIONER:       How often?

COMPLAINANT:  Every once in a while. I don't know.

PETITIONER:       Let's say on a week's basis? How often did I work for him on a week's basis?

23

COMPLAINANT:   Maybe twice a week, two or three times a week.

PETITIONER:      When did he pay me?  Did you ever see him pay me?

      THE STATE:      Objection, relevance.

      THE COURT:      Sustained.

PETITIONER:    If I did work.

COMPLAINANT:   I wouldn't know if he did or didn't.

      THE STATE:      Objection.

      THE COURT:      I sustained the State's objection.  Please move on to another question.

PETITIONER:    Were you ever around when I was doing work, Ms. Hunter?

COMPLAINANT:  Yes.

PETITIONER:    You saw me complete the work?

COMPLAINANT:  Yes.

PETITIONER:    When I completed the work, were you there when me and Mr. Hunter were in the same room?

COMPLAINANT:  Yes.

PETITIONER:    Okay.  So I was finished work (sic) and we're in the same room and it was time for me to go home; so, it was probably time for me to get paid; is that correct?

COMPLAINANT:  I'm assuming so.

PETITIONER:    You never saw him pay me?

COMPLAINANT:  No.

PETITIONER:      So, I worked for free.

        THE STATE:      Objection, Judge.

COMPLAINANT:  I wouldn't know.

        THE STATE:      Objection.

        THE COURT:      Overruled.

PETITIONER:      Where is your husband right now, Ms. Hunter?

        THE STATE:      Objection, relevance.

        THE COURT:      Sustained.

PETITIONER:      Was he – why is he not here today?

        THE STATE:      Objection, relevance.

        THE COURT:      Sustained.

S.F. Vol. 6, pp. 29-31. Petitioner contends that he was denied "the ability to balance the witness's reliance on her husband as the foundation to gain knowledge about [petitioner] and place him at the residence before the offense." (Docket Entry No. 2, p. 6.)

Through the above cross-examination, petitioner established complainant's limited knowledge of her husband's employment and payment of petitioner, and established that petitioner had worked on the property on prior occasions. To the extent petitioner argues that he was prevented from showing that he may have been at the residence working for complainant's husband the day of the burglary, complainant's testimony on redirect examination negated petitioner's purported defense:

25

| THE STATE: | On the particular date in question, did you employ [petitioner] to work for you? |
|---|---|
| COMPLAINANT: | No. |
| THE STATE: | Did your husband employ him to work for you? |
| COMPLAINANT: | No. |
| THE STATE: | Once again, did you give [petitioner] effective consent to enter your property? |
| COMPLAINANT: | No. |
| THE STATE: | Effective consent to take any of this property? |
| COMPLAINANT: | No. |

S.F. Vol. 6, p. 43.

The confrontation clause does not guarantee a defendant cross-examination to whatever extent he desires. A trial judge has discretion to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Kittleson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005); *see also Summers v. Dretke*, 431 F.3d 861, 877 (5th Cir. 2005).

Before a court may grant relief on the basis of a violation of the confrontation clause, the court must apply a harmless error analysis. *See United States v. Stewart*, 93 F.3d 189, 194 (5th Cir. 1996) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error

was harmless beyond a reasonable doubt."); *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (establishing a habeas harmless error standard that prohibits relief unless the constitutional error had a substantial and injurious effect reached by the jury," and noting that a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict). "A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious that it renders the petitioner's trial fundamentally unfair." *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Here, petitioner fails to demonstrate, and this Court's careful review of the record fails to reveal, any violation of petitioner's confrontation rights regarding his cross-examination of complainant at retrial, or that any violation constituted harmful error.

As relevant to Ground (12), the record in this case reveals the following exchange between petitioner and complainant on retrial:

PETITIONER:        Do you have any receipts for this cable box, Ms. Hunter?

COMPLAINANT:  Yes, I do.

PETITIONER:        At a previous proceeding did you testify to the same thing?

COMPLAINANT:  Yes, I did.

PETITIONER:        Do you have that receipt with you today?

COMPLAINANT:  No, I don't.

PETITIONER:        You were given a subpoena to bring those receipts to this
                          proceedings (sic). Could you explain why you didn't bring them?

27

COMPLAINANT:   Because the proceeding was last –

THE STATE:   Wait a minute.  I object.  Proceeding in reference – the State has no knowledge of anything in reference to a subpoena, receipts.

PETITIONER:   It's in the record.  There was a subpoena sent to Ms. Hunter –

THE COURT:   Mr. Rice, please talk to the Court, not the prosecutor.

PETITIONER:   Subpoena was sent –

THE STATE:   Judge, I object to relevance.

THE COURT:   Sustained.  One question at a time.

PETITIONER:   So, today you don't have any receipts to verify this is your cable[.]

THE STATE:   Objection, relevance.

THE COURT:   Overruled.

PETITIONER:   Ownership.

PETITIONER:   Today you don't have any receipts to show ownership that this is your cable box?

COMPLAINANT:   No.

S.F. Vol. 6, pp. 31-32.   The exchange later continued:

PETITIONER:   Did you bring – did you have receipts for anything that was missing out of your residence, Ms. Hunter?

COMPLAINANT:   Yes, I did.

PETITIONER:   Did you bring any of those receipts today?

28

COMPLAINANT:   No, I did not.

PETITIONER:       But you were subpoenaed –

COMPLAINANT:   Last week.

PETITIONER:       – to bring those –

COMPLAINANT:   Last week.

PETITIONER:       – and you didn't bring them?

COMPLAINANT:   Last week.  I was subpoenaed for last week.

*Id.*, pp. 39-40.  Petitioner claims that the trial court unlawfully curtailed his right to cross-examine complainant regarding her witness subpoena and property receipts.

The above cross-examination excerpts show that petitioner effectively cross-examined complainant as to the witness subpoena and property receipts.  Complainant testified that she did not bring the receipts that day because the trial subpoena had been for the week *before* retrial started.  Petitioner fails to show that he was denied his rights to confront complainant or present a full defense through this cross-examination of complainant.  No meritorious grounds for habeas relief are presented.

Petitioner claims under Ground (13) that his conviction was obtained by perjured testimony because the State's eyewitness testified to a version of the offense "which cannot be true under the laws of nature, and therefore perjured (sic) by the basic principles of reality." (Docket Entry No. 2, p. 6.)  In support, petitioner argues as follows:

[N]ot only the witness could not observe the back of the house which is around a 90-degree corner, with the fronts facing in and the rears facing out, no one can. And if one were to swear under oath that they saw something or someone under such a scenario; at the back of such house, or break a window, or paint the back of such a house, or do anything to the back of that house they would be lying plain and simple.

Patricia Arsenault (sic) swore under oath on direct examination and on cross-examination that she observed [petitioner] near the back door or coming out of the back door of her neighbor's house, while she's (sic) stood at the end of her driveway on her property. Nature specifically invalidates that scenario and reveals that it is perjury.

*Id.*, p. 24. Petitioner claims that because the impossibility of the witness's testimony was so obvious, the prosecutor had to know it was perjured.

Due process under the Fourteenth Amendment forbids the prosecution to knowingly use, or fail to correct, perjured testimony. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). To prove that the prosecution has denied him due process of law by relying on perjured testimony, a petitioner must prove that (1) a witness for the state testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). Here, petitioner alleges in conclusory terms that the eyewitness's testimony "defies nature and reality" because of her location relative to the scene of the offense. Petitioner, however, presented these inconsistencies and contradictions to the jury through his cross-examination of the eyewitness. Such contradictions or inconsistencies established a credibility question for the jury, but they do not provide a basis for relief from the conviction on the grounds that the prosecutor knowingly used perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

To the extent petitioner asserts perjury based on alleged inconsistencies between the mistrial and retrial testimony of the eyewitness and complainant, he fails to present probative summary judgment evidence of actual perjury. The record shows petitioner cross-examined these witnesses regarding inconsistencies in their testimony, and that they denied the purported inconsistencies. That petitioner himself disbelieves the truthfulness of their testimony does not stand as probative summary judgment evidence of perjury. The credibility of the witnesses was a matter for the jury's determination, and no grounds for habeas relief are shown.

Relying on these same alleged inconsistencies and contradictions, petitioner claims under Ground (14) that his in-court and out-of-court identifications, *vis-a-vis* the eyewitness, were based on perjury and "incredible circumstances." Again, the question of whether the eyewitness's location during the offense allowed her to observe clearly the offense and the offender was a matter of credibility for the jury's determination. That petitioner strongly doubted the eyewitness's ability to see the individual leaving the burglarized house does not stand as probative evidence that the she committed perjury in identifying petitioner as that individual. Petitioner presents no probative summary judgment evidence supporting his claim that his identifications were based on perjury, and fails to rebut the presumed correctness of the state court's underlying factual determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 330-31.

31

In Ground (15), petitioner complains that he was forced to represent himself on retrial because the trial court refused to appoint him a new lawyer.  Petitioner argues that he was dissatisfied with appointed counsel's services during the mistrial, and that he elected to proceed *pro se* on retrial because the attorney was re-appointed.  This Court construes petitioner's argument as challenging the voluntariness of his *Faretta* waiver of counsel.

Petitioner asserts that he did not want counsel re-appointed because "he did not trust this atty. (sic) and had went it alone where in the mistrial he created inculpatory facts against the applicant" during closing argument.  (Docket Entry No. 27, p. 12.)  Petitioner argues that forcing this particular trial counsel on him as standby counsel violated *Faretta*.  *Faretta* does not stand for petitioner's proposition that he enjoyed a constitutional right to decline any particular appointed counsel; to the contrary, *Faretta* recognizes a defendant's right to decline appointment of *all* counsel.  Nor is a criminal defendant entitled to appointed counsel of his choice.  *United States v. Fields*, 483 F.3d 313, 350 (5th Cir. 2007).  In rejecting petitioner's claims of a *Faretta* violation and an involuntary waiver of counsel, the state court of appeals found as follows:

> Appellant asserts that the trial court erred in permitting appellant to represent himself at trial.  Appellant contends that the record indicates that appellant did not understand criminal law and procedure adequately to represent himself.  Appellant's counsel asserts that, during appellant's hearing on self-representation, appellant did not 'appear to understand that he would have a right of cross-examination at his second trial' and did not 'appear to understand the rules regarding criminal discovery.'

The Sixth and Fourteenth Amendments guarantee the right to assistance of counsel, as well as the right to waive counsel and represent one's self. *Faretta v. California*, 422 U.S. 806, 807-08, 818-20 (1975). A criminal defendant's waiver of the right to counsel and decision of self-representation must be made knowingly and intelligently, and the defendant should be warned of the 'dangers and disadvantages' accompanying such waiver. *Faretta*, 422 U.S. at 835. Such a decision should also be made competently and voluntarily. *Faretta*, 422 U.S. at 834-36. The decision to waive counsel and proceed *pro se* is made 'knowingly and intelligently' if it is made with a full understanding of the right to counsel, which is being abandoned, as well as the dangers and disadvantages of self-representation. The decision is made voluntarily if it is uncoerced. The competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent one's self. *Godinez v. Moran*, 509 U.S. 389, 399 (1993). The defendant's 'technical legal knowledge' is 'not relevant' to the determination whether he is competent to waive his right to counsel. *Faretta*, 422 U.S. at 836.

Here, the record reflects that, before the trial court granted appellant's request to proceed *pro se,* the court questioned appellant regarding his education and discovered that he had a general equivalency degree and had attended a Microsoft certified engineering course at Rice University. The trial court instructed appellant that he would have to follow the rules of evidence and procedure and that he would receive no special treatment. Appellant was provided written *Faretta* warnings and was asked to sign a waiver of court appointed counsel. After reviewing the document, appellant asked several questions, and the trial court explained that appellant was charged with burglary of a habitation. Appellant responded that he understood the charge, as well as the range of punishment. A discussion took place regarding discovery; the court informed appellant that his previous attorney, Hayes, could provide most of the documents that appellant had requested, that some of the documents were not discoverable pre-trial, and that a hearing could be set for any other documents he might still need. Throughout the hearing, the trial court questioned appellant numerous times as to whether he still wanted to represent himself. Appellant consistently responded that he still wanted to proceed *pro se.* At the conclusion of the hearing, appellant signed the *Faretta* warnings, waiving his right to counsel.

> On this record, we do not find anything to indicate that appellant's decision to proceed *pro se* was anything less than knowing and intelligent. *Nor can we find anything in the record indicating that appellant's decision to represent himself was not voluntary.*

*Rice*, at *2-3 (state citations and footnote omitted, emphasis added). The state court found that petitioner's waiver of counsel was not involuntary. Petitioner fails to rebut the presumed correctness of this finding by clear and convincing evidence, or show that it was contrary to *Faretta*. Habeas relief is not merited under this ground.

Petitioner contends in Ground (16) that, by striking black veniremembers, the State violated *Batson v. Kentucky*, 476 U.S. 79, 85 (1986). This issue was raised and rejected on direct appeal, as follows:

> In his fifth point of error, appellant contends that the court erred in failing to discharge the jury panel pursuant to his *Batson* challenge. Appellant asserts that he identified a total of 11 veniremen who were black and were struck by the State and that the State only gave reasons for striking four of the 11 veniremen.
>
> The Fourteenth Amendment's equal protection clause prohibits purposeful racial discrimination by the State in its use of peremptory strikes. To assert a *Batson* challenge, the defendant must establish a prima facie case of purposeful discrimination in the State's use of peremptory strikes. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a racially neutral explanation for challenging the jurors in question. The burden to show purposeful discrimination shifts back to the defendant to impeach or refute the neutral explanation or show that it is merely a pretext. The trial court's ruling on a *Batson* challenge must not be disturbed unless it is clearly erroneous.
>
> To establish a prima facie case, a defendant must show that (1) he is a member of a cognizable racial group, (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, and (3) these facts and any other relevant circumstances raise an inference that the prosecutor used

34

the peremptory challenges to exclude the veniremembers on account of their race.

A review of the record regarding appellant's *Batson* challenge reveals that appellant challenged the prosecutor with improperly striking the following veniremen: 7, 15, 25, and 29. [FTN. Appellant asserted in his brief that he identified a total of 11 veniremen who were black and were struck by the State and that the State only gave reasons for striking four of the 11. We find from our review of the record that appellant challenged the prosecutor's striking of four veniremen; we agree with the State that any other numbers called out by appellant were due to appellate's counting out loud veniremen numbers in order to determine which venireman's number he wished to challenge.] The State then provided the following racially neutral explanations for challenging those jurors:

1.      Venireman number 7 was a member of the defense bar.

2.      Venireman number 15 had a prior aggravated assault conviction.

3.      Venireman number 25 was not paying attention during the prosecutor's voir dire, was looking around, and did not laugh at any of his jokes.

4.      Venireman number 29 could not set aside personal feelings and the court denied the prosecutor's challenge for cause for this venireman.

The burden then shifted back to the defendant to impeach or refute the prosecutor's neutral explanation or show that it was merely a pretext. Appellant did not meet this burden. Therefore, we do not find that the trial court erred in denying appellant's *Batson* challenge.

*Rice*, at *6 (citations omitted).

Petitioner argues that striking a minority venireman because he was a defense attorney was a sham or pretext by the State and unlawful. (Docket Entries No. 2, p. 56; No. 27, p. 13.) Petitioner further complains that no explanation was given for the striking of the seven other panelists. This latter allegation is refuted by, and unfounded in, the trial record. As found by the court of appeals, petitioner's *Batson* objection challenged the striking of four panelists:

veniremen numbers 7, 15, 25, and 29. The record shows that the State set forth racially neutral explanations for challenging those jurors, which explanations petitioner did not controvert with further argument or evidence during his *Batson* proceeding.

In arguing that the State's racially-neutral reason for striking venireman number seven was a sham or pretext, petitioner sets forth nothing more than his own personal disagreement with the validity of the State's reasoning. He presents no probative evidence of sham or pretext. Absent evidence in the record, a court cannot consider a habeas petitioner's conclusory allegations on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Conclusory claims unsupported by specific facts in the record are subject to summary dismissal. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

By Ground (17), petitioner asserts there was no evidence to support a "true" finding to the second enhancement paragraph because handwritten notations on the face of the document invalidate that judgment. A review of the relevant document shows that the word "guilty" is blocked out and the phrase "nolo contendere" is circled. S.F. Vol. 9, Exhibit 20. The exhibit, however, is a pre-printed form for judgments entered on a plea of guilty or nolo contendere; there are no "added" handwritten notations in the instant case because the entire form was completed in handwriting. That the word "guilty" is blocked out and the phrase "nolo contendere"circled signifies nothing more than selection of the proper plea choice on the pre-printed form.

36

Regardless, a jury's finding of "true" to an enhancement paragraph is controlled by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979), as applied to compliance with the state enhancement statute. *French v. Estelle*, 692 F.2d 1021, 1024-25 (5th Cir. 1982). Accordingly, the relevant question in the context of challenging the sufficiency of the evidence to support an enhancement conviction is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the enhancement statute. *Id.*

Under Texas law, the penalty for an offense increase to twenty-five to ninety-nine years imprisonment or life when "the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final." TEX. PENAL CODE § 12.42(d). When prior convictions are collaterally attacked, the judgments reflecting those convictions are presumed to be regular, and the petitioner bears the burden of defeating that presumption. *Sones v. Hargett*, 61 F.3d 410, 421 n.19 (5th Cir. 1995). Here, the State introduced the "pen packet" conviction into evidence, proved it up through its witness, and the exhibit was admitted into evidence for enhancement purposes. Petitioner did not cross-examine the witness, and made no specific objections to the document ascertainable from the record. He presented no evidence contesting the validity or finality of the challenged conviction, and he failed to overcome the presumption of regularity that attended the final judgment. The pen

packet provided legally sufficient evidence to support the enhancement of petitioner's sentence under section 12.42(d), and his habeas ground is without merit.

Petitioner fails to show that the state court's adjudications on the merits of Grounds (5) through (17) were contrary to, or involved an unreasonable application of, Supreme Court precedent, or were the product of an unreasonable determination of the facts in the record. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment dismissing these trial habeas grounds.

## VII.  POST-TRIAL HABEAS GROUNDS

In Ground (18), petitioner alleges that the trial court backdated an order appointing counsel on appeal, resulting in his not receiving an indigent copy of the mistrial record for appellate purposes.

The record shows that, following the reading of the jury's verdict of guilty, petitioner informed the trial court of his decision to appeal and to represent himself on appeal. S.F. Vol. 8, pp. 36, 39-40. He signed his notice of appeal and pauper's affidavit while in court on November 28, 2001. *Id.*, p. 40; C.R. at 213, 223, 249. He filed a *pro se* motion for a free copy of the *retrial* transcript for appeal on November 28, 2001, which the trial court granted the same day. C.R. 224. A few days later, by letter dated December 6, 2001, petitioner requested the trial court to appoint counsel on appeal. C.R. at 238. The letter is not file stamped, but its attached mailing envelope is postmarked December 10, 2001. *Id.* at 239.

The trial court's order appointing counsel on appeal is dated November 28, 2001. C.R. at 249. Petitioner alleges that, because he did not request counsel until his letter of December 6, 2001, the order appointing counsel is fraudulent, void, and denied him due process on appeal. He asserts he was prejudiced and harmed by the order because the trial court subsequently denied his request of February 16, 2002, for the clerk's record (C.R. at 254-56), and his mandamus request of December 26, 2001, for the full record on appeal (C.R. at 240-245), because he was represented by counsel. However, both of these instruments were filed *after* petitioner requested appointment of appellate counsel. Further, no order appears in the record whereby petitioner, proceeding *pro se*, was ordered to receive an indigent copy of the *mistrial* record for appellate purposes. Accordingly, and even assuming the order was incorrectly dated, no harm or injury for purposes of a due process violation appears in the record.

That appellate counsel did not request a copy of the mistrial record is the subject of petitioner's claim for ineffective assistance of appellate counsel under Ground (19). Petitioner complains that appellate counsel failed to designate and include in the appellate record a copy of his mistrial transcript to prove that the State's witnesses committed perjury on retrial. He further complains that appellate counsel failed to include the defense diagram showing the line drawn by Arseno during trial proving her obstructed view of the offense.

Persons convicted of a crime are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate

39

performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th

Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's

representation was deficient and that the deficient performance caused him prejudice. That is,

petitioner must show that but for appellate counsel's deficient performance, the outcome of the

appeal would have been different. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163

F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that

counsel will raise every available non-frivolous ground for appeal. *Evitts*, 469 U.S. at 394;

*West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point.

Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner.

*Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research relevant facts and

law and make informed decisions as to whether avenues will, or will not, prove fruitful.

*Strickland*, 466 U.S. at 690-91.

　　In the instant case, petitioner shows no deficient performance as to the lack of inclusion

of the defense diagram, as petitioner did not mark the diagram as an exhibit at trial, and did not

introduce or attempt to have it admitted into evidence. Accordingly, it did not become part of

the record on appeal and deficient performance is not shown.

　　Regardless, petitioner establishes no *Strickland* prejudice as to either the diagram or the

mistrial transcript. Petitioner states that he intended to use the diagram and mistrial transcript

on appeal to show that the testimony of the State's witnesses was perjured and incredible.

However, the jury weighed the evidence presented at trial and found the evidence satisfactory

to render the conviction. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness ,and the credibility of witnesses may not be re-weighed by either the state appellate court or this Court sitting in habeas review. *See, e.g., Cain v. State,* 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Moreover, the state appellate court would be bound by the retrial record in determining error on retrial; petitioner did not impeach the witnesses on retrial with any instances of prior inconsistent testimony appearing in the mistrial transcript. In short, petitioner would not have prevailed on any appellate ground attempting to impeach the credibility of the witnesses through use of evidence not presented at retrial. No *Strickland* prejudice is shown.

Petitioner fails to show that the state court's adjudications on the merits of Grounds (18) and (19) were contrary to, or involved an unreasonable application of, Supreme Court precedent, or were the product of an unreasonable determination of the facts in the record. *See* 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 404-05. Respondent is entitled to summary judgment dismissing these post-trial habeas grounds.

## VIII. CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 24) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the 30 day of September, 2008.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE